Good morning, Your Honor. This is the court. My name is Richard Ariake, representing the petitioner in this case. You do need to speak up, young man. I can't hear you. I'm an old man from Idaho, so I can't hear you. Very good. I'll try. The petitioner in this case has been in the United States now since 1988, filed for asylum, and got no response for 15 years. The issue in this case is very simple, whether or not he has a well-founded fear of future persecution. He fled to this country because members of his boxing team, he was on the national boxing team, were being picked up and interrogated by the new regime, who just took over two years prior. And some of his fellow teammates who were picked up and interrogated caused him to fear for his life, that he was going to be arrested, and he fled and came to the United States. I don't logically understand that. Why? What is the connection between being on the boxing team and being suspect under this regime? The boxing team was viewed as a representative of the government, an ambassador, so to speak, because they travel both throughout Africa as well as overseas, representing the government and thereby the policies of the government. And when a new regime comes in place, they are viewed as sympathizers with the former regime. Why would that be? Is that true of dancers or athletes or musicians? How did he get on the – does the record show how he got on the boxing team? No, it does not. There is no – I would be speculating if I was to talk about the dancers and the musicians of that country and other countries. Only because they're not Olympians or – He was not an Olympian, but I don't know about the Olympians in that country either. Okay. So he's just a member of a boxing team. Yes. And no other information about other teams. No. None was provided. And no governmental function to the boxing team. There's none, except for the fact that they were deemed ambassadors of the government. And as the previous regime was deemed to be their benefactor, they are deemed to be sympathizers with the previous regime. Now, when President Museveni took over in a coup in 1986, he started rooting out those he considered sympathizers with the previous regime. And when he started arresting and detaining members of the boxing team, other members of the team not yet arrested started – well, they panicked and they thought they were next on the list. And – We don't have any team member yet, do we, who has been imprisoned and beaten for being on the team? Yes, as a matter of fact – We have one team member who was imprisoned, but as I understand the record, we don't know whether that's really because he's on the team. That's correct. We do not know. There isn't enough facts in the records to explain precisely what happened with him, why he was detained. But when he was – Mr. Kadu, which was the team member that was arrested and detained and interrogated, he was not the only one arrested. He's the one mentioned by the petitioner in this case. But we have no evidence in this record to suggest that they were a part of the team and therefore detained or arrested. Well, it was – I mean, we guess. No, it was petitioner's testimony that Mr. Kadu was a member of the team. He was a member of the boxing team. We know he's a member of the team, but we don't know why he was arrested. That's correct. We do not. And we don't know why anybody else was arrested. We do not. But if we take this historically, during that period of time, what Mussovini was doing was going after people he considered sympathizers with the previous government. He was systematically detaining and interrogating, and some of them were actually eliminated. If that – do we have any newspaper articles, anything that shows this pattern that your client would fit into? Other than his testimony. Well, there were newspaper articles submitted before the immigration judge for the hearing reflecting patterns the government engages in. However, the State Department report, even the present State Department report, specifically states that this same regime goes after political opponents. It's still going on today. Yes, but you see, the problem is we're having trouble seeing the link between his being on the boxing team and being perceived – being a political opponent or even being perceived as a political opponent. Is there anything in the record that says he was placed on the team because of his sympathies as opposed to his skill as a boxer? No, not at all. And, in fact, the government's 2003 state country report says, yes, they have poor human rights practices. They go after political dissidents, but I saw nothing in there that discussed the persecution of former regime members. That was in 2003? Yes. I do not have the record from 2000 – from 1998 or 1997 or 1996. It's not in the record, right? It's not in the record, so I can't – it's difficult for me to speak to that. But a careful reading of this – Don't we also have some letters from friends on the team, but neither of the letters said they were persecuted or imprisoned for being on the team? The letters were written to, one, represent that the petitioner was a member of the team along with them and that they, too, had fled to the United States to seek asylum. They were not – I don't know why they didn't specifically state, we were members of the team, we were harassed by the government after we came into power. They left all that information out. However, the reason they came to the United States and also applied for asylum and were granted asylum is because they were all in the same boat, basically. They were all afraid that they were next on the list. Mr. Kadu, after being arrested, fled. I mean, after being released. He didn't wait for a second chance. And that is why the petitioner was afraid as well. I mean, he's a 25-year-old at the time, so he was quite afraid for his life, and that's why he ran. Well, there is not any past persecution. We're really only looking at future persecution, are we? Yes, that's correct. And while we might, because he was deemed credible, suggest that he has subjective fear of future persecution, we're really looking for the past fear or, excuse me, the objective fear, are we? Yes. And what's your best evidence of objective fear here? Well, my best evidence would be the 2009 country reports for human rights practices for Uganda. That report very clearly states that serious human rights abuses still continue against all manner of people from all walks of life, including those that are deemed to oppose the current government. But it doesn't say anything about including those deemed or those from the former regime, does it? No, it does not. It just says that it just discusses the atrocities against members of the general public that are deemed opponents of the government, opposition party members, even demonstrators that are killed just for demonstrating. Okay. I think we understand your position. If you'd like to reserve some time. I will. Thank you. May it please the Court. Kristen Edison on behalf of the Attorney General. Because Mr. Kigundu has waived his opportunity to challenge the agency's denial of his applications for withholding of removal and protection under the regulations implementing the Convention Against Torture, the only issue before the Court is whether Mr. Kigundu met his burden of proving his eligibility for asylum. He did not. So you're suggesting that he waived those simply because he didn't appeal? Your Honor, because Mr. Kigundu didn't discuss the denial of his applications in his opening brief, he's waived his opportunity to do so. Correct. I know your argument. Let me ask you a question which I guess is my biggest problem with the government's case. It seems to me that what I'm supposed to find is that the applicant's fear is not only subjective, which I think given his credibility determination is pretty easy to find, but now I've got to look at his objective fear. And I guess I've looked at the opinions and I've read the I.J.'s opinion very carefully, and I guess I'm trying to figure out what the I.J. did. If you look at page 10 of the transcript, which I think is the only place where the I.J. deals with objective fear, page 10, the second paragraph, it says, the respondent's fear of persecution is largely speculative, based upon hearsay, and in the opinion of the Court, not objectively well-founded. That's the best I can find in all that he wrote about what he looked at and why he said what he said. So what does this mean? What's he relying on here? I mean, I tried to figure out what he was relying on when he said this. How can I tell what he's relying on? He doesn't discuss it any place. Well, Your Honor, the immigration judge goes through Mr. Cogundo's testimony in his decision. Well, if you can show me in his testimony where he's talking about all of the evidence that was given to me, I'd be glad to see it, because, frankly, I looked at that one paragraph, fear is largely speculative, based upon hearsay, and the opinion of the Court, not objectively well-founded, and I'm having a tough time understanding how he discussed all the evidence. And I'm about to send it, if I were voting, unless you can convince me otherwise, I'd send it back and let him have another shot, let him look at the evidence and give me something upon which I can make a decision. Well, Your Honor, as you know, of course, the immigration judge benefits from a presumption that he considered all of the evidence. The immigration judge... Well, that isn't our case law. Our case law says he's got to discuss evidence and say what's hearsay and what isn't and what's speculative and what isn't. He can't just put a general one-liner in there and survive. I usually send it back otherwise. Well, Your Honor, as the Court has discussed earlier, Mr. Kagundu's entire claim is premised on the alleged past arrest for an unknown reason of Mr. Kadu, one of his teammates on the national boxing team. But aside from Mr. Kagundu's assertion, there's simply no evidence that Mr. Kagundu would be targeted due to his membership on the national boxing team. I think that the immigration judge, when he was speaking about hearsay, had to do with Mr. Kadu's letter, which really mentions nothing about his interrogation or arrest. That's your best argument, but where does he say that? Where does the immigration judge say? That's what he was looking at. He doesn't, does he? That's your best argument to make based on what he said. Yes, Your Honor. I mean, if he had looked at it and told me something about it, it seemed like the government made a great opinion out of it when they made the brief, but I couldn't find anything that the IJ had done. He just kind of gave me a one-liner and expected me to swallow it. Your Honor, I believe it's clear on the record, however, that the immigration judge considered Mr. Kagundu's claim. The immigration judge didn't have a duty to articulate any great detail. That's settled law. And I think on this record, the immigration judge's consideration of Mr. Kagundu's testimony is evident. Here, the immigration judge fully articulated Mr. Kagundu's testimony and acknowledged what evidence he submitted. When did he leave the country in relation to the change of government? Your Honor, Mr. Kagundu left in 1988, and the current regime came into power in 1986. So he remained there for two years. I don't believe the record is clear as to whether he was still a member of the national boxing team from 1986 to 1988. And the IJ did say that the facts would indicate that his, this imputed, that in order to, the notion that in order to serve on the team, it was assumed he approved the policies of the government. But then the IJ said, on the other hand, it would indicate, the facts would indicate this did not cause him any difficulty in Uganda, or at least as of the time that his current passport was issued. That's correct, Your Honor. I mean, Mr. Kagundu never experienced any problems in Uganda that he admitted that at page 110 of the record. And he's never been affiliated, the IJ said he's never been affiliated specifically with any political party or movement. That's correct. Mr. Kagundu's testimony reflects that. That's at page 115 and 116. This case is kind of convoluted, isn't it, counsel? I mean, he came here in 88. He came in as a non-immigrant visitor, applied for asylum. They sent him a notice of intent in April of 89. He sent them some information. They didn't do anything about it. Not one thing about it until June of 2003. Then in June of 2003, they sent him a notice to appear, but they even had to change the charges because he'd already been away from the United States on a brief trip to Argentina, and he was readmitted in the public interest.  Here, now they're saying he's present in the United States without a valid visa or entry document. So I guess, again, I can understand my good colleague's questions about past persecution. I don't think there's anything in there. My worry is, is there anything in the IJ's decision about objective fear of future persecution other than that one line? And if you can point me to it, I'm willing to be convinced, but I can't find it. Well, Your Honor, you're correct. That is what the immigration judge said with regard to Mr. Kogundi's claim of a well-founded fear of future persecution. Again, I think the record shows that the immigration judge considered Mr. Kogundi's claim, and that's all the immigration judge is obligated to do. What do you do with this language from our case? I don't say it very good on promoto. M-O-V-S-I-S-I-A-N. M-O-V-S-I-S-I-A-N versus Ashcroft, where we say, we also followed that up in Kaloubi versus Ashcroft, saying, we've long held that the BIA abuses its discretion when it fails to provide a reasoned explanation for its actions. We explain that conclusory statements are insufficient, and the BIA must provide an explanation. Well, Your Honor, if the Court feels that the immigration judge failed to address Mr. Kogundi's claim, of course, it has to go back to the agency. Okay. Absent any questions from the Court, I'm happy to conclude and ask that the Court deny the petition for review with regard to Mr. Kogundi's application for asylum and dismiss it with regard to his application for withholding of removal and protection of the regulations implementing the Convention Against Torture. Thank you, Your Honors. Thank you. Do you wish to add anything? Thank you, Your Honor. This Court has held that even a 10 percent chance of persecution may establish a well-founded fear. Just going through the country reports alone, I think any reasonable person in Mr. Kogundi's position would have his subjective belief that he would be persecuted if he's sent back there. Now, we have to understand this is 22 years ago. Well, nobody's questioning that he was credible and that he had a subjective belief that he would be — something bad would happen to him.  As far as pointing to the connection between members of the national boxing team being persecuted because they were deemed sympathizers with the previous regime, we don't have the facts in the record as to why Mr. Kadu was arrested or other members of the team were detained and questioned. We only know that Mr. Kogundi did not wait to be arrested and questioned before he fled. And the evidence in the record or country reports in general suggest that there is widespread official impunity. There is arbitrary and politically motivated detention in that country. And that is why Mr. Kogundi fears going back there. Well, if that were the case, then I suppose anybody could say something bad is going to happen to me. And that's not — doesn't work. It has to be on the basis of something, doesn't it? Yes, it does. However, in this case, every member of the boxing team was deemed to — or they imputed the opinion of the previous regime to every member of the team because they deemed to accept it. And the support for that is what? Is your client's testimony? I beg your pardon? The support for that, that they imputed political opinions to everyone. It's my client's testimony. They were deemed to be ambassadors, Your Honor. Okay. Thank you. Thank you. The case just argued is submitted for decision.
judges: Schroeder, N. R. Smith, Moody